UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

IN RE:

EUGENE SULLIVAN,                                  CASE NO. 10-04384-WSS

        Debtor.                                         Chapter 7

CLYDE BERGEMANN, INC.,
d/b/a ANTHONY-ROSS COMPANY,

        Plaintiff,

v.                                                         ADV. PROC. NO. 10-00094

EUGENE SULLIVAN,

        Defendant.

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

        David W. Hercher, Counsel for the Plaintiff
        Matthew C. McDonald, Counsel for the Plaintiff
        S. Ward Greene, Counsel for the Defendant
        Terrie S. Owens, Counsel for the Defendant

This matter is before the Court on the Plaintiff's motion for summary judgment and the Defendant's motion for summary judgment. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. After due consideration of the pleadings and arguments of counsel, the Court makes the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

The Plaintiff, Clyde Bergeman, Inc. d/b/a Anthony-Ross Company ("ARC"), is a company in the business of modifying and improving its clients' industrial boilers. The

1

Defendant, Eugene Sullivan, is a former employee of ARC. On February 8, 2008, ARC filed an action against Sullivan, two other former employees, Clay William Brion, III, and Daniel Richard Higgins, and their company, Sullivan, Higgins & Brion, PPE LLC ("SHB"), in the U.S. District Court in Oregon. The District Court granted the Defendants' motion to arbitrate the claims against them, and ARC filed an arbitration demand with the American Arbitration Association in May 2008. Richard Spier of Portland, Oregon was appointed as arbitrator.

The main contention of ARC's complaint was that Sullivan, Higgins and Brion formed and operated SHB to compete for business with ARC, such as the Jambi bark boiler project in Indonesia, while they were still employed with ARC. ARC also alleged that the three employees used ARC's confidential and proprietary information, specifically the Lotus Notes database and the Master Proposal List, and kept copies of the information after they left ARC. Sullivan denied the allegations, and asserted that ARC had previously disclosed or not properly protected the alleged proprietary information. Further, Sullivan stated that SHB did not compete for business with ARC because ARC was only interested in projects within the United States, and the Jambi bark boiler project was not a project that ARC would have pursued. Finally, Sullivan maintained that the members of SHB worked diligently for ARC during their employment and took no action to harm ARC's business.

ARC's amended arbitration complaint contained the following claims for relief: (1) breach of contract; (2) breach of fiduciary duty/duty of loyalty; (3) misappropriation of trade secrets- Oregon Trade Secrets Act, ORS 646.461 et seq.; (4) Computer Fraud and Abuse Act, 18 U.S.C. §1030; (5) injunctive relief; (6) unjust enrichment; (7) interference with contract; (8) interference with prospective economic advantage; (9) aiding and abetting/acting in concert; and (10)

racketeering. Sullivan and the defendants responded with several affirmative defenses[1] and counterclaimed for attorney fees and breach of contract. After an eight-day evidentiary hearing followed by post-arbitration briefs and hearings, Spier issued an Interim Memorandum Decision ("Interim Decision) on March 15, 2010, and a Supplemental Memorandum of Decision ("Supplemental Decision") and an Arbitration Award on July 15, 2010.

In the Interim Decision, Spier found that ARC should recover from Sullivan and the other respondents one half of the compensation and benefits that they received while competing with ARC, plus interest. For Sullivan, the amount was ultimately determined to be $246,589.27.[2] The awards were separate, not joint and several. Spier found that the respondents misappropriated ARC's trade secrets, the Lotus Notes database and the Master Proposal List. Interim Decision, p. 3. Sullivan admits retaining the Master list after leaving ARC. Respondent's brief, p. 5. All claims and defenses (including punitive damages) that were not expressly allowed were deemed to be overruled. Interim Decision, p. 4.

Spier found that while the evidence showed that the respondents "actively discouraged Claimant [ARC] from seeking [the Jambi project] while they were pursuing it for themselves (while still employed)", ARC failed to show that it would have profited from the Jambi project and obtained other profitable projects based on the project's success. Therefore, the arbitrator found that ARC failed to meet its burden of proof on the lost profit damages, and awarded only a return of the portion of the respondents' wages. The arbitrator also found that Brion indicated in

---

[1] The Defendants' affirmative defenses included: (1) failure to state a claim; (2) waiver-trade secrets and confidential information; (3) equitable estoppel; (4) waiver-independent business activities; (5) illegality; (6) not secret/in public domain; (7) independent development.

[2] Arbitration Award, para. 5.

3

an October 22, 2007 email that no one at ARC knew what Higgins, Sullivan and he were doing, and that the group needed to "keep it that way." Interim Decision, p 5. Spier indicates that this desire to keep the respondents' activities secret was joined by Sullivan. He also found that the Master List and the Lotus Notes database were protected information. "It is clear under the evidence that the Master Proposal List (Cl. Ex.177) contains protected information, even though its genesis was a listing that Mr. Sullivan brought with him years before." Interim Decision, p. 6. In his supplemental memorandum, Spier found that ARC met its burden of proof for unauthorized use of trade secrets under ORS 646.461(2)(b) only as to the Lotus Notes database and the Master Proposal List. Supplemental Memorandum, p. 2.

The actual Arbitration Award found that ARC prevailed on its claims for breach of contract (first claim); breach of fiduciary duty/duty of loyalty (second claim); misappropriation of trade secrets (third claim); injunctive relief (fifth claim); unjust enrichment (sixth claim); interference with contract (seventh claim); interference with prospective economic advantage (eighth claim); and aiding and abetting/acting in concert (ninth claim). ARC also prevailed on all of the respondents' affirmative defenses and claims. Sullivan and the other respondents prevailed on ARC's claim under the Computer Fraud and Abuse Act (fourth claim); the racketeering claim (tenth claim); and ARC's request for punitive damages. The monetary relief was awarded under ARC's claims for Breach of Contract (First Claim), Breach of Fiduciary Duty/Duty of Loyalty (Second Claim), Misappropriation of Trade Secrets (Third Claim), Unjust Enrichment (Sixth Claim), Interference with Contract (Seventh Claim), and Interference with Prospective Economic Advantage (Eight Claim). Arbitration award, para. 5. The respondents were also ordered to return or destroy all original and copies in their possession of the Lotus Notes database and the

4

Master Proposal List.

The District Court entered a judgment confirming the arbitration award on August 11, 2010. Sullivan filed the present chapter 7 proceeding on September 22, 2010. Sullivan and the other respondents filed a petition to vacate or correct the arbitration award on October 7, 2010, and a motion for relief from judgment on October 19, 2010 in the District Court. This Court lifted the automatic stay to allow ARC to participate in the Oregon District Court proceeding by its orders of October 29, 2010 and November 9, 2010.

## **CONCLUSIONS OF LAW**

ARC filed this adversary proceeding seeking to have the Oregon District Court judgment declared nondischargeable under 11 U.S.C. §523(a)(4) and (a)(6). The complaint also seeks a declaratory judgment regarding the effect of Sullivan's bankruptcy discharge on the injunction imposed by the District Court order; however, ARC noted in its brief that Sullivan stipulated in his response brief that the injunction is not a claim that may be discharged in bankruptcy. Defendant's Response Brief to Plaintiff's Summary Judgment, p. 24. Both parties rely on the collateral estoppel effect of the arbitration proceeding and the District Court judgment as the basis for their respective motions for summary judgment. The doctrine of collateral estoppel does apply in discharge exception actions under §523(a)[3] if the parties can show that: (1) the issue in the previous action and the present action is identical; (2) the issue was actually litigated in the prior action; (3) resolution of the issues was critical and necessary to the earlier judgment. The burden of proof in the prior action must be at least by a preponderance of the evidence, as required for

---

[3] *Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991).

5

§523(a) dischargeability actions. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).[4]

Under 11 U.S.C. §523(a)(4), a debtor cannot discharge a debt incurred by "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." ARC maintains that Sullivan's actions amount to embezzlement under this section. The Ninth Circuit defines "embezzlement" under §523(a)(4) as:

> 'the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.' *Moore v. United States*, 160 U.S. 268, 269 (1885). Embezzlement, thus, requires three elements: '(1) property rightfully in the possession of the nonowner; (2) nonowner's appropriation of the property to a use other than which [it] was entrusted; and (3) circumstances indicating fraud.'

*In re Littleton*, 942 F.2d 551, 555 (9th Cir. 1991) (citations omitted).

The arbitrator's interim and supplemental decisions found that Sullivan and the other respondents misappropriated the Lotus Notes database and the Master Proposal List. Sullivan had the Master Proposal List for use during his employment with ARC. The arbitrator found that the Master Proposal list contained protected information, and that Sullivan misappropriated it for use in his own business, SHB. In his reply to the Plaintiff's response brief, Sullivan's counsel admits that "the arbitrator did find that the defendants used the plaintiff's Lotus Notes database and Master Proposal List without authorization. However, his conclusory finding was contrary to the evidence which showed that the defendants did not use this material for their own purposes." Defendant's reply to Plaintiff's response brief, p. 5, n.1. Even though Sullivan disagrees with the

---

[4] In its brief in support of its motion for summary judgment, p. 7, ARC acknowledges that it had the same preponderance of the evidence standard in both the arbitration proceeding and this adversary. Sullivan acknowledges the preponderance standard in his response to the summary judgment, p. 8, and relies on issue preclusion in support of his motion for summary judgment. The parties appear to agree that the preponderance of the evidence standard was the same for the arbitration proceeding and the present adversary proceeding.

6

arbitrator's ultimate findings, the arbitrator heard the evidence regarding Sullivan's use of the Master Proposal List, and found in favor of ARC that Sullivan misappropriated the list. Thus, ARC has established the first two elements of embezzlement under §523(a)(4).

Sullivan maintains that ARC cannot rely on the arbitrator's decision for proof of the final element of embezzlement, "circumstances indicating fraud", because fraud was not an element in any of the plaintiff's claims, and therefore was not presented to the arbitrator, and was not a necessary and critical part of the arbitration award. The arbitration award granted relief to ARC on its third claim for Misappropriation of Trade Secrets under ORS 646.461. Under the Oregon Statute 646.461(2)(a), "misappropriation" means: (a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." In turn, the statute defines "improper means" as "theft, bribery, <u>misrepresentation</u>, breach or inducement of a breach of a duty to maintain secrecy or espionage through electronic or other means." ORS 646.461(1) (emphasis added). The Oregon Statute put the issue of misrepresentation before the arbitrator, and the issue was necessary and critical to the arbitrator's findings in the interim and supplemental decisions. The arbitrator found it "telling that Mr. Sullivan discouraged Mr. Garton (Respondents' ultimate superior within the company division) from pursuing the Jambi park boiler opportunity, while Respondents' actively and secretly sought this business." Interim decision, p. 4. Further, in an October 22, 2007 email, Sullivan's business partner Brion stated "Nobody at [Claimant] has any idea what we are doing and we need to keep it that way." Interim decision, p. 5. In determining circumstances of fraud under §523(a)(4), "[i]ntent may properly be inferred from the totality of the circumstances and the conduct of the person accused." *In re Ormsby*, 591 F.3d 1199, 1206 (9th Cir. 2010) (citing *Kaye v. Rose (In re*

Case 10-00094    Doc 55    Filed 05/20/11    Entered 05/20/11 15:34:53    Desc Main
              Document      Page 7 of 10

*Rose)*, 934 F.2d 901, 904 (7th Cir. 1991). The arbitrator's decision to grant relief to ARC under the misappropriation of trade secrets claim indicates that he did find misrepresentations by Sullivan and the other respondents. Those same facts lead this Court to conclude that Sullivan appropriated the Lotus Notes database and the Master Proposal List[5] under circumstances of fraud. Therefore, the Court finds that ARC has established the elements for embezzlement under §523(a)(4).

Sullivan asserts in his cross motion for summary judgment and in opposition to ARC's motion for summary judgment that ARC's claims under §523(a)(4) and (a)(6) fail due to the arbitrator's findings that ARC did not prove damages related to lost profits or business opportunity related to the Jambi project. Sullivan maintains that the monetary award is not related to any harm suffered due to the misappropriation of trade secrets or interference with a corporate opportunity. Looking to the interim decision, it is apparent that Spier found that the evidence showed that Sullivan and the respondents were competing with their employer for business opportunities, taking care to keep their actions secret, and misappropriating protected information. He first noted that the respondents did not "dispute that they would have been obligated to present a bark boiler opportunity for a North America customer [to ARC]. However, to justify their secret effort to obtain the Jambi opportunity in Indonesia for themselves, while still working for [ARC], cuts too fine a distinction." Interim decision, p. 4. Spier continues that it was "telling" that Sullivan discouraged his supervisor from pursuing the Jambi project while going after the business himself. Having observed Sullivan's demeanor at the hearing, Spier believed

---

[5]The parties raised the issue of whether the Jambi project as a corporate opportunity was a property right protected under §523(a)(4). Having based its findings on the misappropriation of the Lotus Notes database and the Master Proposal List, the Court makes no finding on this issue.

that Sullivan would have been "persuasive and effective" in discouraging ARC from pursuing the project even though his own company was trying to get the project. Interim decision, p. 4. Spier concluded that it was likely that ARC would have pursued the Jambi project if Sullivan had recommended it, and that it was likely that ARC would have gotten the project based on SHB's success. Interim decision, p. 4. The problem lay with proof that the project would have earned a profit and led to other profitable projects; the arbitrator found that ARC failed to provide evidence on these points. This finding does not mean that there was no damage, because the arbitrator ultimately ruled for ARC on the misappropriation claim. Rather, he chose to measure ARC's damages by the respondents' salaries during the period that they were competing with ARC. Interim decision, p. 4. Paragraph 5 of the Arbitration Award makes it clear that the monetary relief is awarded under ARC's claims for breach of contract, breach of fiduciary duty, misappropriation of trade secrets, unjust enrichment, interference with contract and interference with prospective economic advantage. See *In re Janssens*, ___ B.R. ___, 2010WL6501984 (Bankr. D. Md.), aff'd and remanded on other grounds *In re Janssens*, 2011WL 1642575 (D. Md.) (bankruptcy court measured employer's damages by employee's salary when employer failed to prove lost profit in an adversary to determine a debt nondischargeable under §523(a)(4) for breach of fiduciary duty and embezzlement). As a result, the Court does not accept Sullivan's argument that ARC failed to prove damages related the misappropriation claim.

    Based on the foregoing, the Court finds that ARC's motion for summary judgment as to dischargeability under §523(a)(4) is due to be granted on the basis of collateral estoppel, and having found that ARC's debt is nondischargeable under §523(a)(4), its claim for nondischargeability under §523(a)(6) is moot. As stated above, Sullivan stipulated in his response

brief that the injunction is not a claim that may be discharged in bankruptcy. Sullivan's motion for summary judgment is due to be denied. It is hereby

**ORDERED** that the Plaintiff, Clyde Bergeman, Inc. d/b/a Anthony-Ross Company, motion for summary judgment is **GRANTED** pursuant to 11 U.S.C. §523(a)(4), and a separate judgment shall be entered in the amount of TWO HUNDRED FORTY-SIX THOUSAND FIVE HUNDRED EIGHTY-NINE AND 27/100 ($246,589.27) DOLLARS in favor of the Plaintiff and against the Defendant, Eugene Sullivan; and it is further

**ORDERED** that the injunction in the District Court order is not a claim that may be discharged in bankruptcy; and it is further

**ORDERED** that Eugene Sullivan's motion for summary judgment is **DENIED**.

Dated: May 20, 2011

WILLIAM S. SHULMAN
U.S. BANKRUPTCY JUDGE